## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|                                   |     |                           |
| --------------------------------- | --- | ------------------------- |
|                                   | :   |                           |
|                                   | :   |                           |
| MOE DREAMS, LLC, et al.,          | :   |                           |
|                                   | :   |                           |
| Plaintiffs,                       | :   | CIVIL ACTION NO.          |
|                                   | :   | 1:08-CV-0196-RWS          |
| v.                                | :   |                           |
|                                   | :   |                           |
| H. MARTIN SPROCK, III, et al.,    | :   |                           |
|                                   | :   |                           |
| Defendants.                       | :   |                           |

## ORDER

This case comes before the Court on Defendants' Motion to Dismiss

Counts II, III, and VIII of Plaintiffs' Amended Complaint [13], Defendants'

Motion to Dismiss Counts II, III, VI, IX, XI, XII of Plaintiffs' Second

Amended Complaint [43], and Defendants' Requests for Hearing [38 and 44].

After a review of the record, the Court enters the following Order.

### Background

Plaintiffs, comprised mainly of investors and franchisees of the

Defendants and their affiliates initiated this action for claims allegedly arising

out of franchise agreements to operate Doc Green's franchises. (Second

Amended Complaint Dkt. No. [30] at ¶¶ 33, 35, & 40.)  In the Second Amended

Complaint, Plaintiffs allege that Defendants made misrepresentations in the

Uniform Franchise Offering Circulars ("UFOCs") and franchise agreements;

that Defendants intermingled individual and corporate assets; and that

Defendants failed to disclose "kickback" payments from suppliers. (Id. at ¶¶ 34-

84.)  Plaintiffs assert fourteen (14) claims based on these allegations. Among

the fourteen claims, Plaintiffs allege that Defendants engaged in racketeering in

violation of the Georgia Civil RICO act (Count II), engaged in fraud (Count

III), made negligent misrepresentations (CountVI), violated the Robinson-

Patman Act (Count IX), intentionally inflicted emotional distress on Plaintiffs

(Count XI), and conspired (Count XII). (Id. at ¶¶ 94 – 109, 117 – 121, 135 –

142, and 156 – 164.)

Plaintiffs assert similar or identical claims regarding Georgia Civil RICO,

the Robinson-Patman Act, and fraud against several individuals and companies

associated with Defendant Ravings Brand Holdings, Inc. in two related cases.[1]

---

[1]The additional cases asserting similar or identical claims are: Massey, Inc., et al.
v. Moe's Southwest Grill, LLC, et al., No. 1:07-CV-0741 and Peterson, et al. v. Sprock,
et al., No. 1:06-CV-3087. Defendants filed a Motion for Judgment on the Pleadings [119]

The legal arguments made in this Motion to Dismiss mirror arguments set forth in motions filed in the related cases.

Pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 9(b), Defendants initially move to dismiss three claims raised in Plaintiffs' Amended Complaint: violation of the Georgia Civil RICO act (Count II); fraud (Count III); and, violation of Section 2(c) of Robinson-Patman Act (Count VIII) [13]. However, in light of Plaintiffs' filing of the Second Amended Complaint [30] and Defendants' filing of a Motion to Dismiss Counts II, III, VI, IX, XI, XII of Plaintiffs' Second Amended Complaint [43], Defendants' Motion to Dismiss [13] is **DENIED as moot**.[2] Defendants also filed a Request for a Hearing [44] on the Motion to Dismiss Counts II, III, VI, IX, XI, XII of Plaintiffs' Second Amended Complaint [43]. However, the Court finds that the Parties' briefs and the record provide sufficient basis for a determination of the matters raised in this Motion. Therefore, Defendants' Request for Hearing [44] is **DENIED**.

---

on identical antitrust, racketeering, and fraud claims in Case No. 1:06-CV-3087 and a Motion for Judgment on the Pleadings [33]on identical antitrust, racketeering, and fraud claims in Case No. 1:07-CV-0741.

[2]The arguments set forth in Defendants' Motion to Dismiss Counts II, III, and VIII of Plaintiffs' Amended Complaint [13] are incorporated into Defendants' Motion to Dismiss Counts II, III, VI, IX, XI, XII of Plaintiffs' Second Amended Complaint [43].

However, the Request for Hearing [38] is **GRANTED** as to Defendants'

Motion to Consolidate for Mini-Trial [14].  Said motion shall be heard on

Tuesday, October 28, 2008 at 2:30 p.m. in Courtroom 2105, United States

Courthouse, Atlanta, Georgia.

Before the Court is Defendants' Motion to Dismiss Counts II, III, VI, IX,

XI, XII of Plaintiffs' Second Amended Complaint [43].

## Discussion

### I.     Motion to Dismiss Standard

When considering a FED. R. CIV. P. 12(b)(6) motion to dismiss, a federal

court is to accept as true "all facts set forth in the plaintiff's complaint."

Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000) (citation

omitted).  Further, the court must draw all reasonable inferences in the light

most favorable to the plaintiff.  Bryant v. Avado Brands, Inc., 187 F.3d 1271,

1273 n.1 (11th Cir. 1999); see also Bell Atl. Corp. v. Twombly, 127 S. Ct.

1955, 1964 (2007) (internal citations omitted).  The United States Supreme

Court has recently dispensed with the rule that a complaint may only be

dismissed under Rule 12(b)(6) when "'it appears beyond doubt that the plaintiff

4

can prove no set of facts in support of his claim which would entitle him to relief.'" <u>Twombly</u>, 127 S.Ct. at 1968 (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)).  The Supreme Court has replaced that rule with the "plausibility standard," which requires that factual allegations "raise the right to relief above the speculative level." (<u>Id.</u> at 1965).  The plausibility standard does not, however, impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]." (<u>Id.</u>)

## II.    Georgia Civil Rico Act Claim (Count II)

Plaintiffs' Second Amended Complaint asserts a cause of action under the Georgia Civil Rico Act, alleging that Defendants engaged in a pattern of racketeering activity in violation of O.C.G.A. §16-14-1 *et seq.* (Dkt. No. [30] at ¶¶ 94-103.)  Defendants move to dismiss Count II on the premise that Plaintiffs have failed to state a Geogia Civil RICO claim. (Dkt. No. [30] at 23.) Defendants assert that Plaintiffs lack standing to bring a racketeering claim because they cannot demonstrate a causal link between any injury and the alleged predicate acts outlined in Count II. (<u>Id.</u> at 27.)  Next, Defendants state that Plaintiffs have failed to state a claim under the Georgia Civil Rico act

because the Second Amended Complaint is "devoid of any factual allegations, and... based on vague and conclusory allegations."(Id. at 28.) Such conclusory allegations fail to demonstrate that Defendants were engaged in a RICO violation under O.C.G.A. §16-14-4(c). (Id. at 25.) Even under the alleged less restrictive Georgia RICO pleading requirement, Defendants argue that Plaintiffs' "shotgun pleadings" and generalized complaints are insufficient to establish a cause of action. (Dkt. No. [48] at 6.) Defendant further argues that Plaintiffs' RICO conspiracy claim is "wholly conclusory" and therefore insufficient to establish a cause of action under the Georgia RICO statute. (Dkt. No. [43] at 30); see Marshall v. City of Atlanta, 195 B.R. 156, 167 (N.D. Ga. 1996). Defendants cite Mills v. Fitzgerald, 668 F. Supp. 1554 (N.D. Ga 1987) stating, with respect to federal and Georgia RICO that, "reallegation of earlier paragraphs is insufficient" to state a claim. (Dkt. No. [48] at 10.); Mills v. Fitzgerald, 668 F. Supp. 1554, 1560 (N.D. Ga 1987) (citing Gregoris Motors v. Nissan Motor Corrp. in USA, 630 F. Supp. 902, 913 (E.D. N.Y. 1986) ("RICO is a specialized statute requiring a particular configuration of elements. These elements cannot be incorporated loosely from a previous narration, but must be tightly particularized and connected in a complaint.")). Finally, Defendants

assert that Plaintiffs' alleged predicate acts of Theft by Deception (O.C.G.A. §

16-8-3), Theft by Taking (O.C.G.A. § 16-8-2), Theft by Conversion (O.C.G.A.

§ 16-8-4), and False Statements and Writings (O.C.G.A. § 16-10-20) fail as a

matter of law, and therefore, cannot comprise a "pattern of racketeering"

required under O.C.G.A. §16-14-4. (Dkt. No. [43] at 30.)  Defendants state that

"Plaintiffs' attempt to base all four predicate acts on the same five vague

allegations is insufficient" to establish a pattern of events under the Georgia

RICO act. (Id. at 33.)

In response, Plaintiffs assert that they have adequately plead a Georgia

RICO claim such that Defendants' motion should be denied. (Dkt. No. [47] at

6.)  Plaintiffs argue that the Second Amended Complaint sufficiently proves

the predicate acts of Theft by Deception (O.C.G.A. § 16-8-3), Theft by Taking

(O.C.G.A. § 16-8-2), and Theft by Conversion (O.C.G.A. § 16-8-4). (Dkt. No.

[47] at 6-7.)  Plaintiffs point to specific paragraphs of the Second Amended

Complaint which allege the "false and deceptive statements in [Defendants']

UFOC" that comprise the elements of the predicate acts. (Id. at 6.; Second

Amended Complaint at ¶¶ 57-62.)  Further, Plaintiffs outline the factual

allegations of the Second Amended Complaint which detail Plaintiffs' injury

flowing from such predicate acts. (Id. at 12; Second Amended Complaint ¶¶ 40, 62, 77, 80.) Plaintiffs rebut Defendants' argument that all alleged predicate acts were based on the same transaction, stating that Defendants' false and deceptive statements in the UFOCs resulting in multiple thefts from Plaintiffs. (Dkt. No. [47] at 7.)

After a review of the pleadings, the Court finds that Plaintiffs have met the burden of pleading a Georgia RICO claim. Plaintiffs would have been better served by setting out the specific factual allegations underlying their Georgia RICO claim in Count II. However, the Second Amended Complaint, when considered in its entirety, sets forth the acts upon which Plaintiffs rely to establish a RICO claim. Although each alleged predicate act is not clearly and succinctly stated in the Georgia RICO section of the Second Amended Complaint, the Court finds that this error does not warrant dismissal of the claim. The Court holds that the Second Amended Complaint contains sufficient information that Defendants can adequately determine the alleged facts that comprise the RICO claim. Furthermore, viewing the facts in the light most favorable to Plaintiffs, the Court holds that the Second Amended Complaint sufficiently alleges an injury and a causal link such that Plaintiffs have standing

8

to bring a Georgia Civil RICO claim. Therefore, Defendants' Motion to Dismiss Plaintiff's Count II Georgia Civil RICO claim is **DENIED**.

## III.    Fraud Claim (Count III)

Plaintiffs' Second Amended Complaint alleges that Defendants made material false representations of fact and omitted mandatory disclosures in conjunction with the UFOCs and franchise agreements. (Dkt. No. [30] at ¶¶ 104-109.)  Plaintiffs assert that Defendants' alleged misrepresentations and omissions constitute fraud because they were made with knowledge of their falsity, for the purpose of inducing Plaintiffs' reliance, and Plaintiffs relied on the false representations to their detriment. (Id.)

Defendants move to dimiss the Count III fraud claim asserting that Plaintiffs fail to allege fraud with particularity as required  by Fed. R. Civ. P. 9(b).[3]  Defendants state that Plaintiffs have not met this burden because they fail to sufficiently plead the "who, what, when, where, and how" of the alleged misstatement. (Dkt. No. [47] at 18) (*citing* WESI, LLC. v. Compass Envtl., Inc., 509 F. Supp. 2d 1353, 1358 (N.D. Ga. 2007); DiLeo v. Ernst & Young, 901

---

[3]Rule 9(b) requires that, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b).

AO 72A
(Rev.8/82)

F.2d 624, 627 *reh'g denied* (7th Cir. 1990), *cert. denied*, 498 U.S. 941 (1990)).

Defendants describe Plaintiffs' Second Amended Complaint as "so devoid of specificity that the reader can only speculate as to how Defendants' statements or omissions were relied upon by, or mislead, Plaintiffs to the advantage of Defendants." (Dkt. No. [47] at 21.)  Further, Plaintiffs' fraud claim fails to meet the heightened pleading requirement because Plaintiffs combine all Plaintiffs and Defendants in their allegations, rather that stating specific allegations against each individual party. (Id. at 19-21.)  Defendants assert that the Second Amended Complaint does not provide fair notice to each Defendant of its alleged fraudulent behavior and therefore, Plaintiffs' Count III fraud claim should be dismissed. (Id. at 22.)  In addition, Defendants argue that Plaintiffs' "effort to convert a garden-variety contract claim into a tort claim is barred by the economic loss rule."  (Id. at 22.); General Electric Co. v. Lowe's Home Centers, Inc., 279 Ga. 77, 78, 608 S.E.2d 636, 637 (Ga. 2005) ("[t]he 'economic loss rule' generally provides that a contracting party who suffers purely economic losses must seek his remedy in contract and not in tort."). "A breach of contract does not, by itself, give rise to a cause of action in tort; and when the allegation that a tort was committed adds nothing of substance to the breach of

10

contract claim, it is mere surplusage." <u>WESI</u>, 509 F. Supp. 2d at 1361; <u>see also</u>

<u>Bishop v. GNC Franchising, LLC</u>, 403 F. Supp. 2d 411, 417 (W.D. Pa. 2005),

*aff'd* 248 Fed. Appx. 298 (3rd Cir. 2007).  Here, Defendants assert that because

Plaintiffs' fraud tort claim is based on the same factual allegations as Plaintiffs'

breach of contract claim, the Count III fraud claim must be dismissed. (Dkt. No.

[43] at 23.)

      In response, Plaintiffs argue that the Second Amended Complaint does

plead the elements of fraud with the particularity required by Fed. R. Civ. P.

9(b).  Plaintiffs state that the Second Amended Complaint identifies the source,

time, place, content, and result of the alleged false statements which comprise

the fraud claim. (Dkt. No. [47] at 4.)  Specifically, Plaintiffs point to the UFOC

as a primary source of the false statements and identifies the Defendants'

statements that Plaintiffs relied upon. (Dkt. No. [47] at 4; Second Amended

Complaint [81] at ¶¶ 35, 40, 41-43.)  Further, Plaintiffs assert that allegations of

"Defendants' fraudulent use of Doc Dollars to create an artificial surge in

business on days prospective franchisees were visiting the store" sufficiently

plead a claim of fraud. (Dkt. No. [47] at 5; Second Amended Complaint ¶¶ 53-

56.)  Plaintiffs state that because each Plaintiff received substantially the same

AO 72A
(Rev.8/82)

UFOC, the source of the alleged fraud claim, each Plaintiff relied upon the same misrepresentations. (Case No. 1:06-CV-3087, Dkt. No. [141] at 29.)[4] Therefore, the failure to separately identify the fraud directed at each Plaintiff does not cause the claim to fail for lack of particularity.  Similarly, Plaintiffs allege that, as to the misrepresentations in the UFOCs, Defendants are not "legally distinguishable as separate persons or entities." (Second Amended Complaint Dkt. No. [30] at ¶ 23.)  Thus, the pleadings, which address the Defendants collectively, do not fail to provide fair and adequate notice to each Defendant of the alleged fraudulent misrepresentations. (Case No. 1:06-CV-3087, Dkt. No. [141] at 29.)

After a review of the Parties' briefs, the Court finds that Plaintiffs have plead the claim of fraud with sufficient particularity to meet the requirements of Federal Rule of Civil Procedure 9(b).  When examined in its entirety, the Second Amended Complaint provides Defendants with specific allegations of

---

[4]By request, Plaintiffs incorporate their responses to Defendants' Motion for Judgment on the Pleadings [119] in Peterson, et al. v. Sprock, et al., No. 1:06-CV-3087 [141] and Defendants' Motion for Judgment on the Pleadings [33] in Massey, Inc., et al. v. Moe's Southwest Grill, LLC, et al., No. 1:07-CV-0741 [48]. (Case No. 1:08-CV-0196 Dkt. No. [47] at FN 1.)  Unless otherwise noted, all citations to the record refer to Moe Dreams, LLC, et al. v. H. Martin Sprock, III et at., No. 1:08-CV-0196.

AO 72A
(Rev.8/82)

fraud, including the source of the alleged fraudulent misrepresentations, the alleged duty of the Defendants to disclose, and the alleged omissions. Taking the Second Amended Complaint as a whole, the Court finds that the Plaintiffs properly identify Defendants with the particularity sufficient to place each Defendant on notice of their roles in the alleged fraud. The Court further finds that due to the alleged similarities among the Plaintiffs' UFOCs, the failure to identify the fraud associated with each Plaintiff does not warrant a dismissal of the claim. Further, the Court finds that Plaintiffs have sufficiently alleged facts to support a claim of fraud such that Count III is not barred by the economic loss rule. In viewing the facts in the light most favorable to Plaintiffs, as required by the appropriate legal standard, the Court finds that Plaintiffs have adequately plead a claim of fraud such that Defendants' Motion to Dismiss Plaintiff's Count III fraud claim is **DENIED**

## IV. Negligent Misrepresentations (Count VI)

Plaintiffs assert a claim of negligent misrepresentation, alleging that Defendants' misrepresentations in the UFOCs resulted in injury to Plaintiffs. (Second Amended Complaint Dkt. No. [30] at ¶¶ 117-121.) Defendants move to dismiss the Count VI claim on the basis that Plaintiffs' allegations are "vague

and wholly conclusory" and merely recite the elements of the claim rather than specify factual allegations. (Dkt. No. [43] at 39-40.)  In response, Plaintiffs assert that the Second Amended Complaint sufficiently pleads the factual allegations that support the negligent misrepresentation claim.

The Court finds that Plaintiffs have sufficiently plead a cause of action for negligent misrepresentation.  At this stage of the litigation, the Court's determination does not go to the merits of the claim, but rather the sufficiency of the pleadings.  After a review of the Second Amended Complaint, the Court finds that Plaintiffs have alleged specific facts which comprise a claim of negligent misrepresentation.  In viewing the facts in the light most favorable to Plaintiffs, the Court holds that Plaintiffs have met the standard of alleging facts upon which relief can be granted.  Therefore, Defendants' Motion to Dismiss Plaintiff's Count VI negligent misrepresentation claim is **DENIED**.

## V.     Robinson-Patman Act Claim (Count IX)

Plaintiffs assert that Defendants' receipt of alleged "kickbacks" from vendors constituted a violation of Section 2(c) of the Robinson-Patman Act, 15

U.S.C. § 12 *et seq.* (Second Amended Complaint Dkt. No. [30] at ¶¶ 135-142.)[5]

Plaintiffs claim a competitive injury resulting from Defendants "accept[ing] benefits from vendors, in exchange for the opportunity to access and market goods, wares and merchandise to the franchisees and to execute agreements to sell provisions, beverages and other products." (Id. at ¶ 138.) Further, Plaintiffs assert that this alleged "kickback" scheme is a *per se* violation of Section 2(c) of the Robinson-Patman Act and entitles Plaintiffs to "treble damages therefrom, the costs of this litigation, attorneys' fees and pre-judgment interest, pursuant to 15 U.S.C.§ 15(a)." (Id. at ¶ 142.)

Defendants move to dismiss Count IX on the basis that Plaintiffs lack standing to bring a claim for alleged violations of Section 2(c) of the Robinson-

_____

[5]Section 2(c) of the Robinson-Patman Act reads as follows:

It shall be unlawful for any person engaged in commerce, to pay or grant, or to receive or to accept, anything of value as a commission, brokerage, or other compensation, or any allowance or discount in lieu thereof, except for services rendered in connection with the sale or purchase of goods, wares, or merchandise, either to the other party to such transaction or to an agent, representative, or other intermediary therein where such intermediary is acting in fact for or in behalf, or is subject to the direct or indirect control, of any party to such transaction other than the person by whom such compensation is so granted or paid.

15 U.S.C. §13(c).

Patman Act. (Dkt. No. [43] at 8.) Relying upon <u>Todorov v. DCH Healthcare</u> <u>Auth.</u>, 921 F.2d 1438 (11th Cir. 1991), Defendants claim that Plaintiffs fail to meet the two requirements necessary for antitrust standing. <u>Id</u>. at 1449. The court in <u>Todorov</u> outlined a two-pronged approach to examining whether a plaintiff should be afforded antitrust standing: "[f]irst, a court should determine whether the plaintiff suffered 'antitrust injury'; second, the court should determine whether the plaintiff is an efficient enforcer of the antitrust laws, which requires some analysis of the directness or remoteness of the plaintiff's injury." <u>Id</u>.

    A.    Antitrust Injury

An antitrust injury is defined as:

> injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendants' acts unlawful. The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation. It should, in short, be the type of loss that the claimed violations would be likely to cause.

<u>Id.</u> Defendants assert that the injury alleged by Plaintiffs is not the type of injury that antitrust laws were intended to prevent. (Dkt. No. [43] at 11.) Defendants cite <u>2660 Woodley Road Joint Venture v. ITT Sheraton Corp.</u>, 369

16

F.3d 732 (3rd Cir. 2004)  for the assertion that Defendants' alleged "kickbacks" and Plaintiffs' competitive injury do not qualify as an antitrust injury.  In 2660 Woodley Road, the Third Circuit  held that "paying inflated purchasing prices to vendors, without more," was not sufficient to establish an antitrust injury under the Robinson-Patman Act. Id. at 738-39.

In opposition, Plaintiffs claim that the alleged "kickbacks" forced Plaintiffs to operate their businesses at a competitive disadvantage, thereby resulting in a financial injury. (Dkt. No. [47] at 11.)  Although not alleged in the Second Amended Complaint, Plaintiffs apparently rely on previous arguments that Defendants engaged in commercial bribery through the "kickback" payments, and that such actions are per se violation of the Robinson-Patman Act. (Case No. 1:06-CV-3087, Dkt. No. [141] at 15.); Ideal Plumbing Co. v. Benco, Inc., 529 F.2d 972, 977 (8th Cir. 1976.); FTC v. Simplicity Pattern Co., 360 U.S. 55, 65 (1959).  Plaintiffs assert that the "kickbacks" and resulting injury demonstrate that the "probable effect of the discrimination would be to allow [a] favorable competitor to draw sales from...the unfavored competitor." (Dkt. No. [47] at 11.); Substantial Investments, Inc. v. D'Angelo Franchising Corp., U.S. Dist LEXIS 17300 (D. Mass. 2004) (citing Best Brands Beverages,

17

Inc. v. Falstaff Brewing Co., 842 F.2d 578, 584 (2nd Cir. 1987) (*quoting* J.

Truett Payne Co. v. Chrysler Motors Corp., 451 U.S. 557, 569-570, 68 L.Ed.2d

442, 101 S.Ct. 1923 (1981) (Powell, J., dissenting in part)).  Because the

suppliers allegedly passed the cost of the "kickbacks" on to Plaintiffs, Plaintiffs

were forced to operate at a competitive disadvantage. (Id. at 11); see Substantial

Investments, Inc., 2004 U.S. Dist. LEXIS 17300 at *8.

In reply, Defendants argue that Plaintiffs do not plead a commercial

bribery claim.  (Dkt. No. [48] at 4.)  Regardless, Defendants assert that

Plaintiffs have not alleged sufficient facts to constitute a commercial bribery

claim. (Id.)  Specifically, Plaintiffs do not demonstrate any improper intent or

conduct on behalf of the vendors who paid the alleged "kickbacks" to

Defendants. (Id.)  Absent "any allegation that the vendor payments were, in

fact, bribes- that is, that they were paid by vendors with the intent to improperly

influence or corrupt [the defendant[s]]," Plaintiffs do not have a claim under

commercial bribery.[6]

---

[6]Dkt. No. [48] at 4.; *citing* Blue Tree Hotels Inv. (Canada) Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 222 (2nd Cir. 2004); see also Freedman v. United States, 437 F. Supp.1252, 1260 (N.D. Ga. 1977) (defining commercial bribery as an offense "committed by the offering and/or paying of a bribe to an employee, agent, or servant, with the intent that his relation to his employer,

Furthermore, Defendants assert that Plaintiffs have not demonstrated a fiduciary or agency relationship as required under a Section(c) claim based on commercial bribery. (Dkt. No. [48] at 5.)  Defendants contend the nature of the business relationship between Plaintiffs and Defendants was insufficient to establish a fiduciary relationship. (Id.) (*citing* Collins v. Int'l Dairy Queen, 54 F.Supp, 2d 1351, 1351 (M.D. Ga. 1999) (stating "[t]he vast majority of courts who have considered the issue have ruled that the franchisor-franchisee relationship, standing alone, does not create a fiduciary relationship.")) Similarly, the Franchise Agreements entered into by Plaintiffs and Defendants explicitly provided that, "no partner, joint venture or fiduciary relationship shall exist between Franchisee and Franchisor." ("Franchise Agreement" Dkt. No. [1-3] at § 14.)  Therefore, Defendants assert that they are not Plaintiffs' agent, representative or intermediary, and the commercial bribery claim must fail. (Dkt. No. [148] at 10); Chmieleski v. City Products Corp., Trade Cas. (CCH) ¶ 64,446 (W.D. Mo. 1983).

---

principal, or master to be influenced")

B.     Proper Plaintiffs

Defendants further move to dismiss under the theory that Plaintiffs lack standing to bring a claim under the Robinson-Patman Act. (Dkt. No. [43] at 15.) Under the Todorov analysis, Plaintiffs are not the "proper party to enforce the antitrust laws," because there are more direct victims of the alleged antitrust violations. (Id.); see Todovor, 921 F.2d at 1448; see also 2660 Woodley Road, 369 F.3d at 741-42.  Defendants state that there are other, more direct victims of Defendants' alleged misconduct. (Dkt. No. [119] at 15; see Florida Seed Co. v. Monsanto Co., 915 F. Supp. 1167, 1176 (M.D. Ala. 1995) (internal citations omitted), aff'd, 105 F.3d 1372 (11th Cir. 1997) ("only those parties who can most effectively vindicate the purposes of the antitrust laws have antitrust standing to maintain a private action.")   The "[v]endors who may have been prevented from selling goods...because they refused to participate in the...program of surcharged and rebates are far more direct victims." 2660 Woodley Road, 369 F.3d at 741-42.

Plaintiffs do not address the Defendants' argument that they are not the proper plaintiffs to bring an antitrust suit in their Response to Defendants' Motion to Dismiss in the case herein.  However, as requested by Plaintiffs, the

Court incorporates Plaintiffs' arguments set forth in response to Defendants'

Motion for Judgment on the Pleadings [119] in <u>Peterson, et al. v. Sprock, et al.</u>,

No. 1:06-CV-3087 [141] and Defendants' Motion for Judgment on the

Pleadings [33] in <u>Massey, Inc., et al. v. Moe's Southwest Grill, LLC, et al.</u>, No.

1:07-CV-0741 [48]. In their responses in those two related cases, Plaintiffs

assert that they are the proper plaintiffs to bring the antitrust suit. (Case No.

1:06-CV-3087, Dkt. No. [141] at 23.) Plaintiffs distinguish the <u>2660 Woodley</u>

<u>Road</u> case by stating that, unlike those plaintiffs, Plaintiffs here have not

conceded that there are other more direct victims of Defendants' conduct.[7]

Rather, Plaintiffs assert injury resulting from incurring the cost of secret

"kickbacks" that Defendants were receiving. (Case No. 1:06-CV-3087, Dkt. No.

[141] at 25.)

---

[7]<u>Id.</u> The Court in <u>2660 Woodley Road</u> stated that the plaintiffs came "close to conceding" that there were other more direct victims by alleging that:

> [v]endors unwilling to pay kickbacks to Defendants were competitively harmed, and by mandating the Hotel's participation in national and regional contracts negotiated by [Sheraton], Defendants denied [plaintiff] the opportunity to obtain advantageous prices and terms from non-participating vendors. Favored vendors not only drew sales or profits from non-favored vendors, but the attendant reduction in competition and higher costs resulted in direct antitrust injury to [plaintiff]. <u>2660 Woodley Road</u>, 369 F.3d. at 742.

AO 72A
(Rev.8/82)

C.     Findings on Robinson-Patman Act claim

The Court finds that Plaintiffs have not adequately plead a claim under Section 2(c) of the Robinson-Patman Act.  First, the Court finds that Plaintiffs' alleged injury is not the type of injury that the Robinson-Patman Act was designed to prevent.  While Plaintiffs may have a claim for breach of contract, they have not demonstrated a competitive injury that rises to the level of an antitrust injury.  See 2660 Woodley Road, 369 F.3d at 738-39.  Examining the facts under a commercial bribery theory, the Court finds that Plaintiffs have failed to allege any improper intent or conduct on the part of the vendors who made the payments to the Defendants.  See Blue Tree Hotels, 369 F.3d at 221. The Court further finds that other vendors or Plaintiffs' customers would be more direct victims that would be the proper plaintiffs to bring an antitrust suit resulting from Defendants' alleged conduct.  Thus, the Court holds that Plaintiffs have not met the two-prong requirements for determining antitrust standing outlined by the Todorov court.  See Todorov 921 F.2d at 1449; see also Cottman Transmission Sys. v. ITT Sheraton Corp., 536 F. Supp.2d 543, 559 (E.D.Pa. 2008). Therefore, Defendants' Motion to Dismiss Count IX of

22

Plaintiffs' Second Amended Complaint is **GRANTED**. Count IX of Plaintiffs'

Second Amended Complaint is **DISMISSED**.

## VI.     Intentional Infliction of Emotional Distress Claim (Count XI)

Plaintiffs assert a claim for intentional infliction of emotional distress,

alleging that Defendants' "kickback" scheme and misrepresentations regarding

the UFOCs caused Plaintiffs severe emotional distress. (Dkt. No. [30] at 156-

161.)  Defendants move to dismiss Count XI on the basis that Plaintiffs have

not sufficiently plead a claim for intentional infliction of emotional distress.

(Dkt. No. [43] at 38-40.)  First, Defendants assert that Plaintiffs fail to allege

extreme and outrageous conduct required under the elements of a claim of

intentional infliction of emotional distress. (Id.); Kirkland v. Earth Fare, Inc.,

289 Ga. App. 819, 822 (Ga. Ct. App. 2008) (defining extreme conduct as "so

outrageous in character, and so extreme in degree, as to go beyond all possible

bounds of decency, and to be regarded as atrocious and utterly intolerable in a

civilized community.")  Defendants argue that the Second Amended Complaint

is devoid of any factual allegations that rise to the level of "extreme and

outrageous". (Dkt. No. [43] at 40.)  Next, Defendants move to dismiss under the

basis that Plaintiffs' claim for intentional infliction of emotional distress lies on

23

conclusory, blanket assertions and a mere recitation of elements. (Id. at 41.)

In response, Plaintiffs rely on Fed. R. Civ. P. 8(a)(2)[8] to demonstrate the sufficiency of their pleading. (Dkt. No. [47] at 9.)  Unlike a heightened pleading required under a fraud claim, here the Plaintiffs assert that the statement "need only give the defendant fair notice of what the claim is and the grounds upon which it rests." Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007) (internal quotation marks omitted).  Plaintiffs argue that the Second Amended Complaint sufficiently meets the pleading standard. (Dkt. No. [47] at 9.)

The Court finds that Plaintiffs failed to sufficiently plead a cause of action for intentional infliction of emotional distress. Under the Twombly standard, a plaintiff must allege "enough facts to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]." Twombly, 127 S.Ct. at 1965.  "In order to recover for intentional infliction of emotional distress under Georgia law, a plaintiff must prove: (1) that the defendant engaged in intentional and reckless conduct; (2) that the conduct was extreme and outrageous; (3) that there is a causal connection between the wrongful

---

[8]Fed. R. Civ. P. 8(a)(2) states, "[a] pleading that states a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support."

conduct and plaintiff's emotional distress; and (4) that plaintiff's emotional distress is severe." Gathright-Dietrich v. Atlanta Landmarks, Inc., No. 1:02-CV-1978, 2003 WL 1964799 at *2 (N.D.Ga. 2003). Having reviewed the Second Amended Complaint, the Court finds that Plaintiffs have failed to allege conduct that could reasonably be characterized as extreme and outrageous. In their Response [47], Plaintiffs cite no factual allegations in their Second Amended Complaint but rely on the conclusory allegations unsupported by facts. Therefore, Defendants' Motion to Dismiss Plaintiff's Count XI intentional infliction of emotional distress claim is **GRANTED**.

## VII. Conspiracy Claim (Count XII)

Plaintiffs assert that Defendants conspired to tortiously harm Plaintiffs and deprive them of economic benefit. (Second Amended Complaint Dkt. No. [30] at ¶¶ 162-164.) Defendants move to dismiss Count XII conspiracy claim, stating that, because Plaintiffs' tort claims of (negligent misrepresentation (Count VI), fraud (Count III), and intentional infliction of emotional distress (Count XI) fail, there is no liability for a civil conspiracy. (Dkt. No.[43] at 41); see Mustageem-Graydon, 258 Ga. App. at 207, *quoting* O'Neal v. Home

AO 72A
(Rev.8/82)

Town Bank & Co., 237 Ga. App. 325, 330 (Ga. Ct. App. 1999) (stating, "absent the underlying tort, there can be no liability for civil conspiracy.").

Plaintiffs' respond that Fed. R. Civ. P. 8(a)(2) does not require a heightened pleading but rather a sufficiency of notice of the claim. (Dkt. No. [47] at 13.)  According to Plaintiffs, the Second Amended Complaint alleged sufficient facts to meets the pleading requirement. (Id.)

The Court finds that Plaintiffs have sufficiently plead a cause of action for conspiracy.  Again, at this stage of the litigation, the Court's determination does not go to the merits of the claim, but rather the sufficiency of the pleadings.  Upon review of the Second Amended Complaint, the Court finds that Plaintiffs have alleged specific facts which comprise a conspiracy claim.  Specifically, the factual allegations underlying Plaintiffs' fraud claim allege concerted activities by Defendants.  (Second Amended Compl. at ¶¶ 53-56.) Viewing the facts in the light most favorable to Plaintiffs, the Court holds that Plaintiffs have met the standard of alleging facts upon which relief can be granted.  Therefore, Defendants' Motion to Dismiss Plaintiff's Count XII conspiracy claim is **DENIED**.

## Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss Counts II, III, VI, IX, XI, XII of Plaintiffs' Second Amended Complaint [43] is **GRANTED** as to Counts IX and XI of Plaintiffs' Second Amended Complaint and **DENIED** as to Counts II, III, VI, and XII of Plaintiffs' Second Amended Complaint.  Plaintiffs' Count IX Robinson-Patman Act claim in the Second Amended Complaint is **DISMISSED**.  Defendants' Motion to Dismiss Counts II, III, and VIII of Plaintiffs' Amended Complaint [13] is **DENIED as moot**. Defendants' Requests for Hearing [44] on Defendants' Motion to Dismiss Counts II, III, VI, IX, XI, XII of Plaintiffs' Second Amended Complaint [43] is **DENIED**.  Defendants' Requests for Hearing on Defendants' Motion to Consolidate for Mini-Trial [38] is **GRANTED**.  Defendants' Motion to Consolidate for Mini-Trial [14] is set for hearing on Tuesday, October 28, 2008 at 2:30 p.m. in Courtroom 2105, United States Courthouse, Atlanta, Georgia.

**SO ORDERED** this __24th__ day of October, 2008.


RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)